# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COMPLETE TEMPERATURE SYSTEMS, INC. Profit sharing Plan and Trust, and DUANE FORST, JOYCE FORST, GERALDINE RUSSO, BRANDI BURGER-RICHMERE, DICK PARRISH, NANCY BELLA and ANGIE MACK, Individually,<br><br>   Plaintiffs,<br><br>   v.<br><br>COMPLETE TEMPERATURE SYSTEMS, INC.,<br><br>   Defendant. | No. 05 C 0392<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This is a suit by a profit sharing plan and trust ("Plan") and seven persons, all plan contributors and employees of Complete Temperature Systems, Inc. ("Company"), against the Company for its negligence as administrator of the Plan. Merrill Lynch was managing the Plan's funds when the Plan incurred a loss of $80,000. About $760,000 was then transferred from Merrill Lynch to one Michael J. Murphy (not the Justice Michael J. Murphy of the Appellate Court, First District) who absconded with those monies along with other funds totaling about $16,000,000. He is now serving thirty years in prison. Unlike Merrill Lynch, he had no bond, and all that was recovered was $100,000 from the Plan's own insurance policy.

The Company has moved for summary judgment on the negligence claim, and there is no material dispute over the facts.[1]

The Company is primarily in the business of commercial heating/cooling service and installation and has been since Duane and Joyce Forst ("Forsts") founded the company in 1971. The Plan was created effective February 1, 1984. The Forsts were the entire board of directors of the Company. Duane Forst was the president and had all the duties of a principal executive officer. Joyce Forst was the secretary and treasurer of the Company. Both served from 1971 until 2003, and both were the trustees of the Plan from its inception. The Company was the Plan administrator and had the authority to appoint an investment manager and allow the manager discretion to manage the fund assets in all respects.

Duane Forst thought that he and Joyce were the plan administrators, acting for the Company of which they were the sole directors. Duane Forst understood that he had obligations to the participants in the Plan and to the Company. The employee handbook listed the Company as the "legal" administrator of the Plan and Duane Forst as the person who would handle the day-to-day operations of the fund.

When an investment manager is appointed, the manager must, in writing, acknowledge receipt of the Plan document and its agreement to act as investment manager undertaking a

---

[1]Duane and Joyce Forst founded the Company in 1971 and ran it until 2003. The Plan was begun in 1984, and the Joyces have been its sole trustees. It was Duane Forst who decided to take the money from Merrill Lynch and give it, unknowingly, to a thief. While the Company hints that the Forsts might not themselves have a right to sue or to benefit from this lawsuit under some version of *in pari delicto*, that is not the issue presented here. Nor is the issue of whether Duane and Joyce Forst have bound themselves to pay the missing funds themselves under the theory in *Sullivan v. Cox*, 78 F.3d 322 (7th Cir. 1996). This motion is filed for judgment against all plaintiffs including those who had nothing to do with the disastrous decision to change investment firms.

fiduciary obligation to the Company. The trustees of the Plan were entitled to rely upon an investment manager's written directions if the manager was appointed by the Plan administrator and had made the written acknowledgments.

Merrill Lynch was the first and only manager until 2002, when the Plan incurred an $80,000 loss. Both Forsts sought out Michael J. Murphy to see if he could do better. Impressed by him, they entrusted nearly $1,000,000 of their own money to him in February 2002. In May of that year, they transferred more than $760,000 of the Plan's money to him.

No legal formalities were observed. The Forsts signed the agreement with Murphy, appointing him as investment manager, and did so as trustees. They had no written direction from the Company (90% of whose shares they owned), nor did they, as directors of the Company, adopt a corporate resolution authorizing transfer of the money. This, despite the fact that they had previously used a corporate resolution to restrict, to themselves, the power to sign drafts or order on behalf of the Company. They never gave written notice to themselves as directors of their conduct.

The Company, like many corporations, did provide for corporate action without a formal meeting and vote, but actions like this (usually taken by unanimous consent of a board of directors) must be reduced to writing. There is no such writing. Even informal decisions by directors required that written notice be given within five days so that the Company could ratify the action taken.

The Plan itself requires that investment managers have a bond to cover defalcations. But the Forsts delivered the money without ever seeing proof of such a bond. In fact, neither of them consulted the Plan to see what might be required. Murphy stole the money, dissipated it, and

now is clothed and fed by the Bureau of Prisons. The Forsts sued Murphy but received nothing for their pains.

It is not difficult to understand why the Forsts might have thought that certain rules of corporate law need not be followed. From the perspective of most people, the failure to formally notify yourself as a director of what you have done as a trustee might seem absurd. Yet businesses that operate as corporations rather than traditional partnerships or sole proprietorships have the advantage of limited liability and other advantages as well, say for example, if one wants to transfer property to another. Many owners of closely held corporations do spend some time writing letters to themselves.

At issue here is the consequence of the failure of the Forsts to adhere to the formal requisites of the corporate form of an enterprise, a form which they chose to adopt for their business as opposed to other available forms. The Company argues that it cannot be found negligent in its conduct as plan administrator because it has never performed an "action" as plan administrator as the law defines corporate action.

The plaintiffs argue, in turn, that a corporation can act only through its officers and employees of which the Forsts were both. The Company is therefore bound by what the Forsts did.

In *Sullivan v. Cox,* 78 F.3d 322 (7th Cir. 1996) the Court of Appeals noted, in dicta, that an individual could, at least in theory, bind his corporation to an ERISA plan agreement, particularly where the corporation was owned and operated, as here, by a husband and wife. Either actual or apparent authority would support the validity of such an act. It is dicta because

the issue in dispute was not whether the corporate office could bind his company. The issue, rather, was whether he had, in fact, bound himself personally to pay delinquent contributions.

In addition, plaintiffs rely on *Matter of Pubs, Inc. v. Champaign*, 618 F.2d 432 (7th Cir. 1980) and assert that the Company is held to know what its officers and directors know, meaning, in a very closely held corporation with an ERISA plan, the directors don't always have to write letters to each other.

The Company replies that its particular by-laws defeat this argument. These by-laws state that the President's duty is to ensure that the Board's resolutions are carried into effect. They further state that the President's power to execute "contracts . . . or other instruments" is limited to those "authorized" by the Board of Directors. So, Defendant argues, the structure of the by-laws mandates a policy of prior authorization. Moreover, the Company asserts that even the provision for informal action allows the authority of the Board to be exercised without a meeting only "if a consent in writing, setting forth the action taken, is signed by all of the directors entitled to vote . . . ." Clearly, this was never done here. And the Forsts used this provision on several occasions, e.g., to elect Robert Forst to the Board, to change by-laws, to resign as President and to change the registered agent.

Here the question is whether, through Duane Forst's actions, the Company as Plan administrator appointed an investment manager, an act from which all of the damages in this case flow. The rule that a corporation is held to know what its officers know is usually applied when a corporate officer deals with a third party who assumes that the deal is authorized. The third party takes actions in reliance on the words and deeds of the corporate officer to its own detriment and may seek a judicial remedy against the corporation. The third party is in this

position because he has no idea of what the corporation has authorized and may not easily be able to check for himself. All this was noted in *Matter of Pubs,* 618 F.2d at 434. True, it may seem to contend that plan trustees have to inform themselves as corporate directors of the actions they took as trustees. Nevertheless, it is far sillier to contend that they are like third parties who could not find out whether their own conduct was authorized under Company by-laws.

The Company, as a Company, did not have "corporate knowledge" of the catastrophic misjudgment perpetrated by the trustees of the Plan until after the damage was done. It is difficult to see how a reasonable trier of fact could conclude that Duane Forst did not know that he had to inform the Company in writing since he had done so and would do so again on other occasions. Also, that issue would have to be decided only if the law would permit Duane Forst to excuse his conduct on the grounds of ignorance of the provisions of the by-laws of a corporation he founded and ran (with his wife) for nearly three decades before the decision to give money to Murphy.

The only way the Company can be liable when it has done nothing is when it is doing nothing that is the grounds for liability. There is such liability under ERISA for failing to give material information to a beneficiary and this is not claimed. Instead plaintiffs rely on the principle that a plan administrator may be liable for delegating its responsibilities to subordinates and not properly supervising them. *See Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984). It is hard to see how this principle can apply to a corporation's failure to supervise its 90% shareholders and sole directors. As plaintiffs have pointed out, a corporation can act only through its officers and in this case, its officers could not be supervised as a practical matter. The officers it would have to supervise failed to report their conduct to the corporation and there was no superior

officer to receive or request such a report. No reasonable jury could find liability under the limited reach of *Leigh v. Engle*.

There might be some way to craft a lawsuit by some plaintiffs against other plaintiffs here if any are capable of paying a judgment. The Forsts may well be subject to suit because they were probably fiduciaries under ERISA. But in the circumstances here, where the Forsts disregarded all of their duties to the Company and all of the legal requirements placed upon those who choose to operate a corporate enterprise, I see no way a reasonable juror could find in favor of the plaintiffs. By failing to inform the Company of any facts which would have required it to act, they sacrificed whatever right they or their employees would have against the Company's assets.[2]

Defendant's motion for summary judgment is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: September 26, 2007

---

[2] I do not concede that had the Forsts complied with the requirements of law that it would have been a meaningless act, because they would have exercised their complete control to cause the Company to approve their conduct. Had they followed the rules, they might well have been reminded that an investment manager ought to have a bond and, as a consequence, decided that giving money to Murphy was unwise.

7